ALDEN R. BENSON *vs.* THOMAS F. DUNN.

*Libel—Levy Court Commissioner—Pleading—Demurrer.*

Demurrers to certain counts of plaintiff's declaration overruled, and to other counts sustained.

( *May 2, 1904.* )

JUDGES SPRUANCE, GRUBB and BOYCE, sitting.

*Frank H. Davis* and *Walter H. Hayes* for plaintiff.

*James H. Hughes* for defendant.

Superior Court, Kent County, April Term, 1903.

CAPIAS CASE.    LIBEL ( No. 26, October Term, 1903).    Demurrer.

The narr consisted of five counts, the first count thereof being as follows:

"*Kent County, ss.*

" Thomas F. Dunn, the defendant in the above stated action, was attached to answer Alden R. Benson, the plaintiff in the above stated action, of a plea of trespass on the case, and thereupon the said plaintiff by Frank H. Davis and Walter H. Hayes, his attorneys, complains:

" 1.    FOR THAT WHEREAS, the said plaintiff before and at the time of the committing of the grievances hereinafter mentioned, was and now is an honest, upright and faithful citizen of this State, and at the several times hereinafter mentioned, and for a long time before, was and still is one of the Levy Court Commissioners of Kent County, and hath always during the time of his being such Levy Court Commissioner of Kent County hitherto behaved and conducted himself righteously, faithfully and properly and honestly

in the discharge of his said office of Levy Court Commissioner of Kent County, and never was guilty of the offences or misconduct hereinafter stated to have been charged upon and imputed to him by the said defendant, nor until the committing of the grievances by the said defendant as hereinafter mentioned, was ever suspected of any such offences or misconduct, by reason whereof the said plaintiff had deservedly acquired the honor, esteem and good will of all his neighbors and others, good and worthy citizens of this State, to whom he was known, to wit : at Kent County, aforesaid ;

"NEVERTHELESS the said defendant well knowing the premises, but contriving and wickedly and maliciously intending to injure the said plaintiff in his good name, credit and reputation, and to bring the said plaintiff into great disgrace, scandal and distrust as such Levy Court Commissioner, as aforesaid, amongst all his neighbors and other good and faithful citizens of this State, on the twenty-ninth day of May A. D. 1903, at Kent County aforesaid, falsely, wickedly and maliciously did publish and cause and procure to be published in a certain newspaper called 'The Index,' the said newspaper then and there having a large circulation in said Kent County, of and concerning the said plaintiff, certain false, scandalous, malicious and defamatory words, containing amongst other things the false, malicious, scandalous and defamatory matter following, that is to say :

### " ' COUNTY WORK.

" ' We ( meaning the said defendant ) are informed that after the bid of Contractor Hirons ( meaning one Hirons, a citizen of said county, who had submitted a bid to the Levy Court of said county for making certain changes in the County Building in the said county ) was handed into the Levy Court ( meaning the Levy Court of Kent County ) Levy Courtman Benson ( meaning the said plaintiff ) took him ( meaning the said Hirons, bidder as aforesaid ) aside and after a whispered conversation ( meaning a whispered conversation between said plaintiff and said Hirons, bidder as aforesaid ) Hirons ( meaning the said Hirons, bidder as aforesaid ) raised

his bid ( meaning his said bid for making said changes in said County Building) from $1,600 to $1,700 ( meaning that the said plaintiff as Levy Court Commissioner as aforesaid, unlawfully, corruptly and dishonestly advised said contractor as aforesaid, to increase his said bid so that the cost of said work to said Kent County would be $100 more than the said Hirons was then and there ready and willing to do the same for.) We (meaning the said defendant) do not find fault with Mr. Hirons (meaning Mr. Hirons, bidder as aforesaid,) he ( meaning the said Hirons, bidder as aforesaid,) like most men, wants all he can get for his ( meaning the said Hirons ) work. But why is it that other contractors ( meaning other persons who had bid for county work given out by said Levy Court) have no chance to get county (meaning Kent County) contracts? Perhaps it is like the county (meaning Kent County ) printing and supplies ( meaning printing done for and goods, wares and merchandise furnished to said Kent County). Mr. Benson ( meaning the said plaintiff ) has selected his man ( meaning the said Hirons, contractor as aforesaid) and as he ( meaning the said plaintiff ) runs the Levy Court ( meaning the Levy Court of Kent County ) he ( meaning the said plaintiff) gives out contracts ( meaning contracts for work and labor done and materials furnished to said Kent County ) to suit himself ( meaning the said plaintiff) and when he ( meaning the said plaintiff ) sees an opportunity, he ( meaning the said plaintiff ) gives his ( meaning the said plaintiff) friends a chance to raise their bids ( meaning that the said plaintiff and Levy Court Commissioner as aforesaid, unlawfully, corruptly and dishonestly canveyed information of the amount of bids submitted to the Levy Court for county work or supplies for said Kent County to friends of his, so that they might raise the amount of their bids for said work and supplies to be furnished said county, and thereafter obtain from said Levy Court through the acts of the said plaintiff the contract for the performance of said contract).

" ' Small wonder that the tax rate ( meaning the tax rate of Kent County ) is increased and the county ( meaning Kent County )

has no money. $100 ( meaning the $100 increase of said Hirons' bids for work in making changes in the county building of Kent County aforesaid ) is not much, but many such jugglings with bids means a large waste of the county's money. We ( meaning the defendant) should like to know from Mr. Benson ( meaning the plaintiff) what became of the extra $100 ( meaning the $100 which said Hirons increased his bid aforesaid, by reason of the unlawful, corrupt and dishonest advice of the said plaintiff as Levy Court Commissioner as aforesaid ) and why he cries Graft and rake-off against other people when bids for county work ( meaning work for Kent County ) are raised at his ( meaning the said plaintiff) suggestion. ( Meaning that bids submitted to said Levy Court to do work for said Kent County were dishonestly, corruptly and unlawfully changed to greater amounts than the amount therein originally contained by and through the unlawful, corrupt and dishonest advice and assistance of the said plaintiff as Levy Court Commissioner as aforesaid, whereby the citizens and community of Kent County aforesaid, were defrauded out of large sums of money.) It's easy to waste the county's ( meaning Kent County ) money, but the day of reckoning will come when taxpayers will demand an account of stewardship.'

" By means of which said premises the said plaintiff hath been, and is greatly injured in his aforesaid good name, fame and credit, and brought into public scandal, infamy and disgrace, with and amongst all his neighbors and other good and worthy citizens of this State, in so much that divers of those neighbors and citizens to whom the integrity of the said plaintiff was unknown, on occasion of the committing of the said several grievances, from thence hitherto, suspected and believed and still do suspect and believe the said plaintiff to have been, and to be a person guilty of malfeasance in his said office of Levy Court Commissioner as aforesaid, so as aforesaid mentioned to have been charged upon and imputed to the said plaintiff by the said defendant, and thereby and otherwise by means of the premises, the said plaintiff hath been and is injured

and damaged to wit, at Kent County aforesaid, in the sum of Five Thousand Dollars, and therefore he brings his suit."

The third count was substantially the same as the above.

The second, fourth and fifth counts were substantially alike but differed from the first and third counts as follows :

After the allegation in the first paragraph of the count that the plaintiff "was and still is one of the Levy Court Commissioners of Kent County", the following clause was contained in said latter counts, viz., "which said Levy Court had and has cognizance and control of the making and repairs of all county buildings in said county, and was and is authorized to receive proposals or bids for the making of such repairs." Further in the first paragraph of the libelous matter and in the innuendo concerning the contractor raising his bid from $1600 to $1700, following the words " unlawfully, corruptly, dishonestly," the words "and with evil intent" were contained in said latter counts, and in the latter part of said first paragraph after the same words, the words " and with evil intent " were again used. Near the end of the same paragraph after the words " obtain from said Levy Court through the," the words " unlawful, illegal and corrupt," were used in said second, fourth and fifth counts. In the second paragraph of said libelous matter, in the innuendo as to what became of the extra $100, after the word " corrupt " the word " evil " was used; and in the innuendo following the word " suggestion " in the same paragraph, immediately after the word " unlawfully " the words " with evil intent " were used, and in the same innuendo after the words " Levy Court Commissioner as aforesaid " the clause " given and done by said plaintiff as such Levy Court Commissioner, with evil intent," were used in said second, fourth and fifth counts.

The causes of demurrer filed to the first and third counts of the declaration were as follows, viz :

1. For that said count does not allege any duty or authority on the part of the Levy Court Commissioners of Kent County to receive any bids or proposals or award any contracts for any work or supplies whatever.

2.　For that said count does not allege any duty or authority on the part of the Levy Court Commissioners of Kent County to receive any bids or proposals or award any contracts for the making of changes or repairs in the County Building of said county or for printing and supplies for said county.

3.　For that the said count does not allege that it was the duty of the Levy Court Commissioners of Kent County to award contracts for work and supplies to the lowest bidder.

4.　For that said count does not allege that the plaintiff was a Levy Court Commissioner of Kent County by positive averment but by way of recital only.

( Causes of demurrer 5 and 6 were withdrawn by demurrant.)

7.　For that it does not appear anywhere in the said count what the bid referred to in the alleged libel related to and whether the same was for public purposes or not.

8.　For that the said plaintiff in the said count does not inform this defendant upon what charges or statements in the said supposed libelous article therein set out he relies for his cause of action.

9.　For that the said count does not contain any distinct statement showing in what way the plaintiff was injured by said publication of the said article quoted.

10.　For that the said count does not show that part of the said supposed libelous publication is libelous and what part is not, so that the libelous part may be pleaded to by this defendant.

11.　For that the said count does not allege what offences and misconduct were imputed to the said plaintiff by the said supposed libelous publication so that the same may be traversed.

12.　For that the said count is not sufficiently particular and definite to enable this defendant to plead thereto.

The following additional causes of demurrer were filed to counts 2, 4, 5 and 6, viz.:

1.　For that the said count does not aver any duty or authority on the part of the Levy Court Commissioners of Kent County

to receive bids or proposals or award any contracts for any work and supplies at the time referred to in the alleged libelous publication.

2. For that the said count does not allege that it was the duty of the Levy Court Commissioners of Kent County to award contracts for work and supplies.

6. For that the said count states the powers of the Levy Court Commissioners of Kent County in relation to making repairs of County Buildings in said county and receiving proposals for bids for the making of such repairs as a conclusian of law, and by way of recital and does not state the same in detail, directly and positively, as it should do.

## DEFENDANT'S BRIEF ON DEMURRER.

The plaintiff's declaration contains five counts. In all of the counts, the declaration recites but does not aver that the plaintiff was a Levy Court Commissioner of Kent County. It is recited that the plaintiff " at the several times hereinafter mentioned and for a long time before was and still is one of the Levy Court Commissioners of Kent County" but nowhere is it specifically averred that he was a Levy Court Commissioner at the time of the alleged libel or at any other time.

The first and third counts do not attempt to define the powers and duties of the Levy Court of Kent County or of the plaintiff as a member thereof.

The second, fourth and fifth counts do attempt to state by way of recital that " the said Levy Court had and has cognizance and control of the making and repairs of all County Buildings in said county and was and is authorized to receive proposals or bids for the making of such repairs " but does not aver or state in any way the duty of the Levy Court of Kent County or of the plaintiff as a member thereof or that it was his or its duty to award contracts to the lowest bidder or otherwise.

The part of the alleged libel which appears to be relied on in the said declaration is that part which refers to the raise of a particular bid by contractor Hirons and there is no statement or averment relating to the same in the inducement of the said counts. The only attempt to state extrinsic facts is by way of innuendo.

It is submitted that the publication set out in the several counts of the declaration, if published, in relation to one holding no office or having no duty to perform in relation to the transaction therein referred to, would not be libelous. It is therefore necessary to aver in the declaration such extrinsic facts and circumstances as will make the publication when read in connection therewith, libelous. The declaration should state that the plaintiff was a Levy Court Commissioner at the time of the receiving of bids referred to in the publication; that it was the duty of the Levy Court to receive bids and proposals for work at that time and their duty to award contracts therefor to the lowest bidder or bidders.

*Rice vs. Simmons, 2 Harr., 417; 1 Chitty's Pleading, 400, 402, 406 ; 407 ; Newell on Defamation, 613; Townsend on Slander and Libel, Section 335.*

Chief Justice Shaw in the case of *Commonwealth vs. David L. Child, 13 Pickering, 198,* which was an indictment for libel of a member of the Senate of Massachusetts and Chairman of the Committee of Accounts, says on page 201: " Where words do not in their natural sense and import charge an indictable offense but where extrinsic matter is necessary to be brought in, such matter must be distinctly averred with the certainty required by the rules of good pleading." He then goes on in the well considered opinion to state the facts necessary to be averred in such indictment stating in effect that it is required by the rules of pleading to be distinctly averred as a transversible fact that the person claiming to be slandered did hold the office of Senator, together with all the circumstances which would tend to show that the facts imputed to him by the defendants was a violation of his public duty.

In the same line are *Brettun vs. Anthony, 103 Mass., 37; York vs. Johnson, 116, Mass., 482 ; McCallum vs. Landby, 145 Mass.,*

*234; Adams vs. Stone 131, Mass., 433; Legg vs. Dunleavy, 80 Missouri, 558; Taylor vs. Neeland, 1 Douglas (Mich.), 67; Van Epps vs. Jones, 50 Georgia, 231; Montgomery vs. Knox, 23 Florida, 595; Weeks' Damnum Abseque Injuria, Sec. 58.*

That the innuendo cannot supply the lack of proper averments in the inducements is a well settled rule of law established in the cases in *116 Mass. 482, 1 Douglas, 67; 131 Mass. 433; 1 Indiana Appellate Court, 146; 1 Chitty's Pleading, 406.*

Other authorities cited: *Commonwealth vs. David L. Child, 13 Pickering (Mass.), 198, 201, 203, 204; Brettun vs. Anthony, 103 Mass., 37 (39); Adams vs. Stone, 131 Mass., 433; Emig vs. Daum, 1 Indiana Appellate Court, 146; Oakley vs. Farrington, 1 Johnston Cases (New York), 129; Legg vs. Dunleavy, 80 Mo., 558; Taylor vs. Kneeland (Michigan), 1 Douglas, 67; Van Epps vs. Jones, 50 Georgia, 231; Montgomery vs. Knox, 23 Florida, 595; Rice vs. Simmons, 2 Harr., 417.*

*Hayes*, for plaintiff, replied.

SPRUANCE, J.:—The Court are very clear that the demurrers as to the second, fourth and fifth counts should be overruled, and we so order.   We have some doubt about the first and third counts, and we have concluded to sustain the demurrers as to those two counts.